[Civ. No. 44063. First Dist., Div. One. Nov. 13, 1979.]

CITY OF MILL VALLEY, Plaintiff and Appellant, v.
TRANSAMERICA INSURANCE COMPANY, Defendant and
Respondent.

COUNSEL

Bagshaw, Martinelli, Corrigan & Jordan and Leland H. Jordan for Plaintiff and Appellant.

Farella, Braun & Martel, Jerome I. Braun and Randall W. Wulff for Defendant and Respondent.

OPINION

**ELKINGTON, Acting P. J.**—The City of Mill Valley (City) was the insured under a liability insurance policy written by Transamerica Insurance Company (Transamerica). The City's appeal is from a judgment denying recovery in its action based upon a claim of liability of Transamerica under that policy.

The uncontradicted background facts of the case follow. A series of heavy rains, in January 1970, had caused a landslide within the City which brought about substantial property damage to two of the City's

homeowners. The homeowners filed property damage suits against the City on theories of *negligence* and of *inverse condemnation.* Following a nonjury trial of the consolidated actions the trial court found, among other things:

(a) A "substantial contributing cause of [the] landslide was the surface waters discharged...by City's drainage system."

(b) However, the City's "drainage systems...were [not] carelessly and negligently designed, constructed, controlled, and maintained by the City [so] as to create a dangerous condition." Further, there is no way the City could "have known of any dangerous condition in sufficient time prior to [the landslide] to have taken measures to protect [the homeowners]...."

The ensuing, and now final, judgment for the homeowners was entered on the theory of *inverse condemnation* alone.

After satisfying the homeowners' judgment the City made claim upon Transamerica for indemnification under its policy. The claim was rejected and the instant unsuccessful action against Transamerica, and this appeal, followed.

Transamerica's insurance policy, as relevant to the appeal, provided: "The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of...property damage, to which this insurance applies, caused by an occurrence,...[An occurrence is defined as:] [A]n accident (or event), including injurious exposure to an event or a series of events, which results, during the policy period, in...property damage *neither intended. nor expected* from the standpoint of the insured." (Italics added.)

 Transamerica's contention is that its policy "was neither designed nor intended to cover this unique risk" of *inverse condemnation.*

 The best evidence of the intent of parties to an insurance policy is the policy itself. (See *Baine* v. *Continental Assur. Co.,* 21 Cal.2d 1, 5 [129 P.2d 396, 142 A.L.R. 1253]; *O'Doan* v. *Insurance Co. of North America,* 243 Cal.App.2d 71, 78-79 [52 Cal.Rptr. 184].)

█ The better-known and traditional concept of inverse condemnation manifests itself where the property damage is a known and reasonably anticipated, but regrettable, incident of a public project or purpose, or as said in *Bauer* v. *County of Ventura,* 45 Cal.2d 276, 286 [289 P.2d 1], where the property damage is "a *deliberate act* carrying with it the purpose of fulfilling one or another of the public objects of the project as a whole." (Italics added.) In such a context Transamerica's instant policy would patently afford no coverage for the damages, which would be "intended [or] expected from the standpoint of the insured."

But more recently the concept of inverse condemnation has been broadened. It is now settled law that "any actual physical injury to real property proximately caused by [a public entity's] improvement as deliberately designed and constructed is compensable [as inverse condemnation] under article I, section 14, of our Constitution *whether foreseeable or not.*" (Italics added; *Albers* v. *County of Los Angeles,* 62 Cal.2d 250, 263-264 [42 Cal.Rptr. 89, 398 P.2d 129]; and see *Holtz* v. *Superior Court,* 3 Cal.3d 296, 303 [90 Cal.Rptr. 345, 475 P.2d 441].) █ Just as clearly where property damage is not *foreseeable,* and hence "neither intended nor expected from the standpoint of the insured," a liability insurance policy such as Transamerica's would provide the here questioned coverage.

It should be borne in mind also that inverse condemnation is of the nature of a *theory* or *remedy* for vindication of a property owner's *cause of action* against a public entity for damage to his property. █ "A cause of action must be distinguished from the remedy which is simply the means by which the obligation...is effectuated...." (*O'Hagen* v. *Board of Zoning Adjustment,* 19 Cal.App.3d 151, 163 [96 Cal.Rptr. 484]; and see *Frost* v. *Witter,* 132 Cal. 421, 426 [64 P. 705]; *Elliott* v. *City of Pacific Grove,* 54 Cal.App.3d 53, 57 [126 Cal.Rptr. 371]; *Venuto* v. *Owens-Corning Fiberglas Corp.,* 22 Cal. App.3d 116, 122 [99 Cal.Rptr. 350]; *Merlino* v. *West Coast Macaroni Mfg. Co.,* 90 Cal.App.2d 106, 115 [202 P.2d 748].) As we said in *Colvig* v. *RKO General, Inc.,* 232 Cal.App.2d 56, 65-66 [42 Cal.Rptr. 473]: "The essence of a cause of action is the existence of a primary right and one['s] violation of that right, i.e., it arises out of an antecedent primary right and corresponding duty, and a breach of such primary right and duty by the person upon whom the duty

rests.... The primary right and duty and the delict or wrong constitute the cause of action in the legal sense.... 'The cause of action is simply the obligation sought to be enforced.'"

■ It will be noted that Transamerica's policy's coverage did not purport to depend upon an injured party's pursuit, or the trial court's grant, of a particular remedy. Instead it specifically provided coverage to an insured who became *"legally obligated,"* because of another's *cause of action* for property damage which was "neither intended nor expected from the standpoint of the insured."

The cause of action for damages against the City of the homeowners of this case, as found by the superior court, was attributable to *"unforeseeable"* physical injury to their property which was proximately caused by the City's drainage system as "deliberately designed and constructed...." No contention is made that those findings were unsupported by the evidence. Under the terms of its policy Transamerica was obliged to indemnify the City for the amount of the homeowners' judgment.

■ A secondary contention of Transamerica is that its policy was *legally invalid* insofar as it might purport to insure the City against liability for property damage caused by *inverse condemnation.* The contention is founded upon Government Code sections 810.8 and 990, as in effect during the here relevant period.

Government Code section 990 provided that a city may: "(a) Insure itself against all or any part of any liability for any injury."

Government Code section 810.8 provided, as here relevant, that: "'Injury' means...damage to...property...of such nature that it would be actionable if inflicted by a private person."

We are unpersuaded that a 1971 amendment (after the insurance policy and property damage of this case) to section 990 modifying the above quoted language to read "(a) Insure itself against all or any part of any tort or inverse condemnation liability," manifests a *preexisting* legislative intent that inverse condemnation liability might not be insured against. The Law Revision Commission's comment to the amendment was that it *makes "clear* that a local public entity has authority to insure against all inverse condemnation liabilities." (See West's Ann. Gov. Code, § 990; italics added.) Such comments are "per-

suasive evidence" of the legislative intent. (*Brian W. v. Superior Court*, 20 Cal.3d 618, 623 [143 Cal.Rptr. 717, 574 P.2d 788].)

And it seems manifest that an insurance policy such as Transamerica's—indemnifying the City against liability "because of...property damage...caused by an occurrence...(or event)...[which is] neither intended nor expected from the standpoint of the insured"—covers claims for property damage as "would be actionable if inflicted by a private person."

As we have interpreted Transamerica's policy, it provided permitted coverage according to Government Code sections 810.8 and 990.

■ Yet another of Transamerica's arguments points out the "uncontroverted" testimony of its chief regional underwriter that "the policy in question was [intended] to cover only usual forms of tort liability and not the *generically unique inverse condemnation.*" If the term "generically unique inverse condemnation" connotes what we have characterized above as the "traditional concept" of inverse condemnation, the witness' testimony only confirms the policy's language that it provides no coverage for damages "intended [or] expected from the standpoint of the insured." But if the testimony's purport was that Transamerica *intended* a coverage other than that defined on the face of the policy, it reasonably had no probative value.

■ The intention of parties to an insurance policy will be "'demonstrated by the language employed, read and considered as a whole.'" (*Home Indem. Co. v. Leo L. Davis, Inc.*, 79 Cal.App.3d 863, 869 [145 Cal.Rptr. 158].) The words "are to be given their common, ordinary and customary meaning." (*United Services Automobile Assn. v. Warner*, 64 Cal.App.3d 957, 962 [135 Cal.Rptr. 34].) "The policy should be read as a layman would read it and not as it might be analyzed by...an insurance expert." (*Crane v. State Farm Fire & Cas. Co.*, 5 Cal.3d 112, 115 [95 Cal.Rptr. 513, 485 P.2d 1129, 48 A.L.R.3d 1089].) ■ And even where the policy's words are ambiguous (a circumstance not here observed), the uncertainty will be resolved "'against the insurer.'" (*State Farm Mut. Auto. Ins. Co. v. Johnston*, 9 Cal.3d 270, 274 [107 Cal.Rptr. 149, 507 P.2d 1357].)

■ Further, Transamerica's witness gave no testimony as to the *mutual intention of the parties* to the insurance policy. Nor was there

evidence that the claimed intent of Transamerica was in any way communicated to the City. While extrinsic evidence is sometimes permissible to "determine the meaning the *parties* [italics added] gave to the words" of a written agreement (*Pacific Gas & E. Co.* v. *G.W. Thomas Drayage etc. Co.*, 69 Cal.2d 33, 38 [69 Cal.Rptr. 562, 442 P.2d 641, 40 A.L.R. 3d 1373]), an undisclosed unilateral intent of the insurer of an insurance contract will be deemed "immaterial" (see *Brant* v. *California Dairies, Inc.*, 4 Cal.2d 128, 133 [48 P.2d 13]; *Consolidated Dock & Storage Co.* v. *Superior Court,* 18 Cal.App.3d 949, 952 [96 Cal.Rptr. 254]).

The testimony of Transamerica's witness should have been disregarded by the trial court.

The judgment is reversed. The superior court will enter judgment for the plaintiff City of Mill Valley as prayed.

Newsom, J., and Grodin, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied January 24, 1980.