**LAWYERS TITLE INSURANCE CORPORATION, Plaintiff,**

v.

**UNITED STATES FIDELITY & GUARANTY COMPANY; Aetna Insurance Company, Defendants.**

**No. C 88 0399 JPV.**

United States District Court, N.D. California.

Nov. 10, 1988.

---

Terry S. Kaplan, Collisson & Kaplan, Los Angeles, Cal., for Lawyers Title Ins. Corp.

Peter C. Haley, Richard A. Bunn, Knecht, Haley, Lawrence & Smith, San Francisco, Cal., for defendant Aetna Ins. Co.

Roberta Knapp, Archie S. Robinson, Barbara J. Frischholz, Robinson & Wood, Inc., San Jose, Cal., for defendant U.S. Fidelity and Guar. Co.

## ORDER RE MOTION TO COMPEL AND FOR SANCTIONS

WAYNE D. BRAZIL, United States Magistrate.

After carefully considering the written submissions and oral arguments of both parties, the court enters the following ORDER:

1. Plaintiff seeks to compel disclosure of confidential documents that defendant has generated after the filing of this lawsuit. Defendant asserts that the confidential documents it has generated after the filing of the suit enjoy qualified immunity from production as work product. Plaintiff argues that since defendant has a duty to process plaintiff's claim, defendant would have produced some of the documents in question in the ordinary course of its business and that such documents are not generated "in anticipation of litigation" as that term is used in Federal Rule of Civil Procedure 26(b)(3).

To respond sensibly to plaintiff's argument it is necessary to focus on what this suit is about: it is *not* about the manner in which Aetna has processed plaintiff's claim, a claim which plaintiff did not present until *after* filing this declaratory relief litigation. Rather, the suit is about coverage, which means that it is primarily about what the words in a contract mean. It follows that documents generated by Aetna in response to the suit and subsequent "claim" are not likely to be of great evidentiary moment, if they are admissible at all. At its heart, plaintiff's objective may be to learn what defendant, and defendant's lawyers, secretly think the language in the contract means. Plaintiff may hope that it will find documents which suggest an interpretation of the relevant contract language that is arguably inconsistent with the position taken by Aetna at trial, thus creating some doubt in the mind of the trier of fact about what Aetna's real view of the contract language is.

■ One problem with this line of argument is that under the objective theory of contract interpretation a party's (or its lawyer's) current opinion about the meaning of contract language that was drafted several years ago is not overwhelmingly important. Under the modern theory of contracts, a court looks to objective, not subjective, criteria in ascertaining the intent of the parties. *Brobeck, Phleger & Harrison v. Telex Corp.*, 602 F.2d 866 (9th Cir.1979), certiorari denied 444 U.S. 981, 100 S.Ct. 483, 62 L.Ed.2d 407. So, while the documents in question arguably satisfy the broad relevance standard applicable during the discovery stage, plaintiff has failed to show that they are likely to be of evidentiary significance or that their disclosure is reasonably calculated to lead plaintiff to the discovery of other evidence that would be admissible and might well be of consequence.

These observations become important when we consider the competing interests that could be harmed by ordering disclosure of the subject documents. Plaintiff's position threatens core interests that the work product doctrine was designed to pro-tect. It is clear that all of the documents were created at a time not merely when litigation was anticipated, but after it had been formally commenced. One purpose of the work product doctrine is to create an arena of privacy in which a party to litigation and its representatives can think freely, creatively, and critically about the merits of the case. A party and/or its agent should be able to brainstorm and to engage in vigorously self-critical analysis and debate without worrying that his words will end up in his adversary's hands or be introduced at trial. It would do great harm to these ends if a party could create an entitlement to documents that reflected private ruminations about the case simply by filing a lawsuit before presenting his claim to an insurance carrier.

Moreover, Aetna has argued persuasively that it would be infeasible, in a setting like this, to cleanly separate those documents that would be prepared in the normal course of business from those prepared in connection with the litigation. In fact, it is arguable that after a lawsuit is filed a "normal course of business" no longer exists with respect to the subject of that suit. Since Aetna apparently had no notice of plaintiff's claim on the bond until plaintiff served Aetna with the complaint in this declaratory relief action, there was no period of "business as usual" with respect to this matter. Since all of the documents in issue here were generated after the suit was filed, and since all of the documents relate to the central subject matter of the suit (namely, whether there is coverage under the bond), it is reasonable to assume that in generating the documents Aetna had its litigation interests principally in mind. The court cannot see how a party in Aetna's position (already a defendant on the bond) could set up two parallel but wholly separate procedures: one to defend the lawsuit and the other to process the claim on the bond as if there were no litigation. How could a group of adjusters process the "claim" responsibly without considering the claims, assertions and arguments made in the complaint and other documents filed in the litigation? Furthermore, it is unreasonable to adopt rules

whose effect would be to force insurance companies to employ and deploy two wholly separate teams of adjusters and lawyers to conduct at the same time two separate processes that have the same subject matter. Such a procedure would make no financial sense (in the end, consumers would foot the bill) and would artificially create a risk that the two teams would arrive at mutually exclusive conclusions. A rule of procedure that creates this kind of risk only for one kind of litigant (an insurance carrier) would be unfair.

Given all these considerations, the court holds that work product protection presumptively extends to the confidential documents generated by Aetna about this matter after the lawsuit was filed. This ruling does not mean, of course, that the documents in question are absolutely immune from discovery. It does mean, however, that plaintiff may not have access to the documents unless it can make a showing sufficient to penetrate the work product protection.

Of course, it would be unfair to permit Aetna to withhold documents during the discovery stage, then introduce those documents as part of its defense in chief during the trial. But there is no reason to believe that Aetna has any such intention.

■ 2. Plaintiff also seeks extensive information about claims made against Aetna over the past five years and, for the same period, complaints by state insurance commissioners. As filed, plaintiff's requests are far too broad. At a minimum, plaintiff must reduce the scope of these requests so that they call for information only about policies of the same kind as the one in issue here. This is not a bad faith case; the sole issue is coverage. It follows that information about how other people, insured under different policies, have felt about how Aetna has responded to their claims is too marginal in utility to justify the burden on defendant that complying with the requests as originally framed would entail.

■ 3. Finally, plaintiff seeks information about the computer system Aetna uses to store, organize and retrieve data about claims. Plaintiff purports to justify this broadly framed and intrusive request on the ground that plaintiff needs this information "in order to facilitate the production of the relevant matter" that plaintiff sought through the requests discussed in the first section of this opinion and order. The court assumes that plaintiff wants this information not to facilitate defendant's production efforts, but in order to better evaluate the adequacy of those efforts and in order to frame additional requests in the future. The court's refusal, above, to order the broad productions sought by plaintiff eviscerates the justification for this last disputed request. But even if broader requests were appropriate, it is far from clear that the court should force a party that has invested heavily in developing information management systems to share those systems with opposing counsel without some showing that the party has failed to respond in good faith and adequately to discovery probes. The mere possibility that a party might not produce all relevant, unprotected documents, is not a sufficient basis for ordering such a party to disclose its entire computerized system of information management. Nor should the possibility that a lawyer could better frame his discovery requests serve as a sufficient predicate for ordering disclosure of proprietary information about a computer system. If such a predicate were sufficient litigation might be filed simply to learn how other businesses solve complex data management problems. At a minimum, counsel who seek access to opponents' information management systems should be required to show that conventional discovery methods have failed to produce the information they need to litigate their case.

For the reasons set forth above, the court hereby DENIES plaintiff's motion to compel except to the extent reflected in the court's MINUTE ORDER of October 7, 1988.

The court also DENIES the parties' cross motions for sanctions. While it now seems quite clear to the court, after substantial thought, how the issues presented in plaintiff's motion should be resolved, when these matters were first presented they

seemed to pose questions of genuine substance. Moreover, the issue addressed in the first section of this opinion appears to be one of first impression. Thus it would not appear appropriate to sanction plaintiff's counsel.

IT IS SO ORDERED.