963 F.2d 378
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
AMERICAN EMPIRE SURPLUS LINES INSURANCE COMPANY, Plaintiff,
v.
SCANRAY CORPORATION; Pacific Indemnity Company, Defendants,
v.
ASTROPHYSICS RESEARCH CORPORATION,
Defendant-third-party-plaintiff-Appellee,
v.
AMERICAN CASUALTY COMPANY OF READING, PENNSYLVANIA,
Third-party-defendant-Appellant.
AMERICAN EMPIRE SURPLUS LINES INSURANCE COMPANY, Plaintiff-Appellee,
v.
SCANRAY CORPORATION; Astrophysics Research Corporation,
Defendants-third-party-plaintiffs-Appellants,
v.
AMERICAN CASUALTY COMPANY OF READING, PENNSYLVANIA,
Third-party-defendant-Appellee,
and
Western Employers Insurance Company,
Third-party-defendant-cross-claimant-Appellee.
 Nos. 90-55324, 90-55340.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Sept. 12, 1991.
Decided May 18, 1992.
 
 Before BEEZER, CYNTHIA HOLCOMB HALL and WIGGINS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 OVERVIEW
 
 2
 This appeal involves a simple insurance coverage dispute arising from the crash of Air India flight 182. Three insurance companies seek a declaratory judgment of their respective liability for a faulty airport scanning device which failed to detect a bomb loaded on the Air India flight in Canada. The scanning equipment was supplied by Astrophysics Research Corp. (Astrophysics),[1] which held insurance policies issued by the three companies. American Casualty Company provided Astrophysics with a general liability policy, American Empire Surplus Lines Insurance Company (American Empire) provided Astrophysics with a products liability policy, and Western Employers Insurance Company (Western Employers) provided an umbrella liability policy. All issues on appeal were decided by the district court on motions for summary judgment and turn on the interpretation of the three insurance policies under California law. We affirm in part and reverse in part.
 
 BACKGROUND
 
 3
 On June 23, 1985, Air India flight 182 crashed into the Atlantic Ocean off the coast of Ireland. The flight originated in Toronto, Canada, made a stop in Montreal, Canada, and was bound for Europe when it crashed. Astrophysics, a California corporation, provided security scanning equipment to Air India for use in the Toronto and Montreal airports. As a result of the crash, numerous lawsuits were filed against Astrophysics in Canadian courts alleging that the scanning equipment failed to detect an explosive device which was placed on board flight 182 in either Toronto or Montreal.
 
 
 4
 At the time of the crash, American Casualty provided a general liability policy, American Empire provided a completed operations and product liability policy, and Western Employers provided an umbrella liability policy. Astrophysics tendered defense of the underlying lawsuits to American Empire, which accepted under a reservation of rights. Subsequently, American Empire initiated this declaratory relief action against Astrophysics seeking judicial determination of its liability. American Casualty and Western Employers were joined in the action as third-party defendants.
 
 
 5
 Between April and October of 1989, Astrophysics, American Casualty, and American Empire brought various motions for summary judgment. The motions were based on specific provisions of the American Casualty, American Empire, and Western Employers insurance policies. The district court, interpreting the policies, determined that 1) the American Casualty policy only covered products which were "rented"; 2) the "policy territory" provisions of the American Casualty policy did not exclude coverage; 3) the American Empire policy only covered products which were "sold"; 4) the Western Employers policy covered only those damages exceeding the primary amount covered by either the American Empire or American Casualty policies; and 5) a triable issue of fact existed as to whether the scanning equipment was rented or sold by Astrophysics to Air India.
 
 
 6
 In December 1989, the case proceeded to trial on the rented/sold issue. The district court found that the scanning equipment was rented and not sold by Astrophysics. Therefore, the court held that the American Casualty policy provided primary coverage, the Western Employers policy provided secondary, excess coverage, and the American Empire policy provided no coverage. American Casualty and Astrophysics appeal.
 
 DISCUSSION
 
 7
 The district court's conclusions made on motions for summary judgment are reviewed de novo. Kruso v. International Tel. & Tel. Corp., 872 F.2d 1416, 1421 (9th Cir.1989), cert. denied, 110 S.Ct. 3217 (1990). The appellate court must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. Tzung v. State Farm Fire & Cas. Co., 873 F.2d 1338, 1339-40 (9th Cir.1989).
 
 
 8
 Under California law, the starting point in interpreting an insurance policy is the policy's language and its plain meaning. Fireman's Fund Ins. Co. v. Fibreboard Corp., 182 Cal.App.3d 462, 466, 227 Cal.Rptr. 203, 205 (1986); see Reserve Ins. Co. v. Pisciotta, 640 P.2d 764, 767-68 (Cal.1982). Courts accord the words of an insurance policy their "common, ordinary and customary meaning." Fibreboard, 182 Cal.App.3d at 466, 227 Cal.Rptr. at 205 (quoting City of Mill Valley v. Transamerica Ins. Co., 98 Cal.App.3d 595, 602, 159 Cal.Rptr. 635 (1979)). Insurance policies must be interpreted as a layman would read them, not as an attorney or insurance expert might read them. Crane v. State Farm Fire & Cas. Co., 485 P.2d 1129, 1130 (Cal.1971); see Pisciotta, 640 P.2d at 767 (courts must interpret words "according to the plain meaning which a layman would ordinarily attach to them"). In interpreting a policy's terms, the "intent of the parties and the reasonable expectations of the insured are considered." Continental Cas. Co. v. City of Richmond, 763 F.2d 1076, 1079 (9th Cir.1985) (applying California law); see Pisciotta, 640 P.2d at 768.
 
 
 9
 The general rule is that, when terms of an insurance policy are ambiguous, they are "construed against the insurer and in favor of the insured." Commercial Union Ins. Co. v. Sponholz, 866 F.2d 1162, 1163 (9th Cir.1989) (applying California law and citing Pisciotta ); see also AIU Ins. Co. v. Superior Court, 799 P.2d 1253, 1264 (Cal.1990); State Farm Mutual Auto. Ins. Co. v. Partridge, 514 P.2d 123, 128 (Cal.1973); Pisciotta, 640 P.2d at 768; Crane, 485 P.2d at 1130; Ponder v. Blue Cross, 145 Cal.App.3d 709, 718, 193 Cal.Rptr. 632, 636 (1983). "An exclusionary clause must be conspicuous, plain and clear and must be construed strictly against the insurer and liberally in favor of the insured." Crane, 485 P.2d at 1130 (citations omitted); see Ponder, 145 Cal.App.3d at 719, 193 Cal.Rptr. at 637.
 
 
 10
 American Casualty argues that the general rule requiring interpretation of any ambiguity against the insurer is inapplicable in this case because its policy is not a contract of adhesion. It asserts that in acquiring the insurance policy Astrophysics was represented by an experienced insurance broker and had options available other than the American Casualty policy. However, there is no evidence that Astrophysics took an active part in the negotiation and drafting of the policy's individual terms. The American Casualty policy was essentially a form policy, with no specifically negotiated amendments.
 
 
 11
 We find that the general rule of interpreting coverage clauses broadly and resolving ambiguities in favor of coverage applies in this case. See AIU, 799 P.2d at 1264. In AIU, the California Supreme Court made it clear that the strong presumption in favor of coverage is applicable even if the insured "possesses both legal sophistication and substantial bargaining power." Id. at 1265. Unless the terms of the policy were "negotiated or jointly drafted," California law requires us to follow the general rule favoring coverage. Id. at 1267; see also Keating v. National Union Fire Ins. Co., 754 F.Supp. 1431, 1437 (C.D.Cal.1990) (general rule in favor of coverage applies where policy was not "negotiated paragraph by paragraph" and was not the product of "joint drafting"). Therefore, we must interpret ambiguous policy terms in favor of coverage for Astrophysics.
 
 
 12
 1. American Casualty's Territory Restriction
 
 
 13
 American Casualty contends that the "policy territory" clause in its policy eliminates coverage for the Air India crash because the crash occurred in international waters off the coast of Ireland. The clause states that "[t]his insurance applies only to Bodily Injury or Property Damage which occurs within the Policy Territory." The policy's definition section defines "Policy Territory" as follows:
 
 
 14
 1. the United States of America, its territories or possessions, or Canada, or
 
 
 15
 2. international waters or air space, provided the Bodily Injury or Property Damage does not occur in the course of travel to or from any other country, state or nation, or
 
 
 16
 3. anywhere in the world with respect to damages because of Bodily Injury or Property Damage arising out of a product which was sold for the use or consumption within the territory described in paragraph (1) above, provided the original suit for damages is brought within such territory.
 
 
 17
 4. Anywhere in the world with respect to Bodily Injury, or Property Damage, and when such coverage is provided, Personal Injury or Advertising Injury arising out of the activities of any Insured permanently domiciled in the United States of America though temporarily outside of the United States of America, its territories and possessions or Canada, provided the original suit for damages because of any such injury or damage is brought within the United States of America, its territories or possessions or Canada.
 
 
 18
 For the American Casualty policy to cover the damages attributable to Astrophysics, the crash of flight 182 must have occurred within one of these four paragraphs describing the "policy territory." Astrophysics argues, and the district court found, that the policy territory description is ambiguous and that it must therefore be interpreted in favor of coverage.
 
 
 19
 The first three paragraphs are inapplicable. First, the crash did not occur within the United States, its territories or possessions, or Canada. Second, taken in conjunction with paragraph one, paragraph two refers to damage occurring in international waters or air space, provided the damages are associated with travel originating and ending only in the United States or Canada. Although flight 182 originated in Canada, it was destined for Bombay, India. Thus, there is no coverage under paragraph two.[2] Third, the scanning equipment was rented instead of sold by Astrophysics, rendering paragraph three inapplicable.
 
 
 20
 Therefore, the policy territory issue turns on the interpretation of paragraph four, which the district court relied upon in finding coverage. The interpretation of paragraph four centers on the two clauses which follow the terms "Bodily Injury", "Property Injury", "Personal Injury", and "Advertising Injury." It is undisputed that the second clause, beginning with the word "provided" and limiting coverage to suits brought in the United States or Canada, is applicable to all types of injury. However, the applicability of the first clause, beginning "arising out of," is not as clear. If this first clause modifies all four types of injury (bodily, property, personal and advertising), then the Air India crash did not occur within paragraph four's policy territory definition. However, if this clause modifies only personal and advertising injury, coverage is afforded because paragraph four would include bodily injury and property damage occurring anywhere in the world, provided the resulting lawsuit was brought in the United States or Canada.
 
 
 21
 It is unclear whether the first clause is intended to modify the bodily injury and property damage terms. Although American Casualty argues that the absence of any comma after "Advertising Injury" is grammatically consistent with its interpretation of the contract, a normal reading of the paragraph could certainly indicate that the first clause applies only to personal and advertising injury. See Pisciotta, 640 P.2d at 767-68 (phrases must be given the meaning an ordinary layman would attach to them and, "if semantically permissible," must be construed in favor of coverage); Crane, 485 P.2d at 1130. A hairsplitting analysis of the relevant grammar simply begs the question. If such an analysis is necessary, the language is not "clear and unmistakable" as required by California law. 640 P.2d at 768 (the insurer has the burden of phrasing any exceptions or exclusions to coverage in clear and unmistakable language). Therefore, we find paragraph four ambiguous and construe the language in favor of coverage.
 
 
 22
 American Casualty argues that interpreting paragraph four to cover bodily injury and property damage anywhere in the world renders the first three paragraphs meaningless. We find that broad coverage under paragraph four is consistent with the first three paragraphs. Paragraphs one and two define certain limited areas, without the requirement that the underlying suit be initiated in the United States or Canada. For accidents within those definitions, coverage is provided regardless of the forum.
 
 
 23
 A broad interpretation of paragraph four does render paragraph three redundant; the coverage in paragraph three is merely a subset of the coverage for bodily injury and property damage provided under the broad interpretation of paragraph four. Nevertheless, recognizing this redundancy does not resolve the ambiguity in paragraph four nor make the meaning of paragraph four clear and unmistakable. It would be logical for American Casualty to set forth specifically in paragraph three an important subset of the coverage provided under paragraph four. More to the point, it would be logical for a layman to read and understand paragraph three but still interpret paragraph four broadly as Astrophysics did in this case. Paragraph four stands as an independent clause, following the period at the end of paragraph three; and a layman would not necessarily use paragraph three as the key to understanding paragraph four. Given the heavy burden placed on American Casualty to make exclusions clear and unmistakable and the general rule favoring coverage when any ambiguity exists, the district court did not err by interpreting paragraph four broadly.
 
 2. American Empire's Rental Exclusion
 
 24
 American Empire contends that its policy's rental exclusion eliminates coverage for the crash of flight 182. American Empire's products liability coverage is set forth in a three step definitional approach. The clause governing American Empire's products liability insurance is conspicuously placed as the first clause on the page entitled "COMPLETED OPERATIONS AND PRODUCTS LIABILITY INSURANCE" and states:
 
 I. COVERAGE A--BODILY INJURY LIABILITY
 COVERAGE B--PROPERTY DAMAGE LIABILITY
 
 25
 The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of
 
 A. bodily injury or
 B. property damage
 
 26
 to which this insurance applies, caused by an occurrence, if the bodily injury or property damage is included within the completed operations hazard or the products hazard, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient,....
 
 
 27
 This coverage clause is followed by a section labeled "Exclusions." The exclusions section states that "[t]his insurance does not apply" to a number of product liability occurrences. However, the exclusion section never mentions that the insurance does not cover liability stemming from rented products.
 
 
 28
 The key to recognizing that the policy does not cover liability for rented products is understanding that a "products hazard" does not include hazards stemming from rented products. To gain this understanding, the insured must refer back to the definition of a products hazard, where the policy states:
 
 
 29
 "products hazard" includes bodily injury and property damage arising out of the named insured's products or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs away from the premises owned by or rented to the named insured and after physical possession of such products has been relinquished to others;
 
 
 30
 Although this products hazard definition does not actually state that rented products are excluded under the policy, the insured may refer back to the definition of "named insured's products."
 
 
 31
 The definition of the named insured's products is the third and final step in the exclusion of rented products from products liability coverage. However, the definition of the named insured's products is somewhat ambiguous; a layperson could read the definition either to exclude all rented goods or to exclude only goods relating to vending machines. According to the definition,
 
 
 32
 "named insured's products" means goods or products manufactured, sold, handled or distributed by the named insured or others trading under his name, including any container thereof (other than a vehicle), but "named insured's products" shall not include a vending machine or any property other than such container, rented to or located for use of others but not sold.
 
 
 33
 Astrophysics argues that it is entitled to coverage because the rental exclusion is (1) inconspicuous and (2) ambiguous.
 
 
 34
 First, California law requires that an exclusionary clause be conspicuous, meaning that the clause must "be positioned in a place and printed in a form which would attract the reader's attention." Elwood v. AID Ins. Co., 880 F.2d 204, 207 (9th Cir.1989) (quoting Ponder, 145 Cal.App.3d at 719, 193 Cal.Rptr. at 637). American Empire's three-step rental exclusion fails this test. The exclusion is not placed in the "Products Liability" or "Exclusions" section of the policy but in the "Definition" section of the policy. Moreover, there is nothing in the "Products Liability" or "Exclusion" section of the policy that would put Astrophysics on notice that rented products are not covered under the policy. The only road to discovery of the rental exclusion is the products hazard definition, a meandering route at best.
 
 
 35
 American Empire cites Elwood for the proposition that a definitional exclusion may be conspicuous without being placed in the exclusions section of a policy. See id. at 208 (distinguishing Schmidt v. Pacific Mutual Life Ins. Co., 268 Cal.App.2d 735, 74 Cal.Rptr. 367 (1969)). In Elwood, the policy's definition of an underinsured motor vehicle limited underinsured motorist coverage to vehicles "with bodily injury liability coverage which is less than the limits of this coverage." Id. at 207. This court held that the definition need not be "contained in a section entitled 'Exclusions' in order to be enforceable." Id. at 208. However, the definitional exclusion in Elwood was preceded by a section entitled "Limit of Liability" which provided that the liability limits under the policy would be reduced by payments made on behalf of an underinsured motorist or other tortfeasor. Thus, the definition of an underinsured motorist merely reiterated the exclusion set forth in the "Limit of Liability" section. Id. at 205, 208.
 
 
 36
 The American Empire policy contains no such limitation or exclusion clause before the definition of "named insured products." The only coverage clause or exclusionary clause reference to rented products comes later in the American Empire policy and is only an indirect reference to the named insured's products by way of defining a products hazard. Unlike the policy limits in Elwood, American Empire's rented products exclusion does not attract a reader's attention as required by California law.
 
 
 37
 Our conclusion that American Empire's rental exclusion is inconspicuous is buttressed by Judge Rymer's findings in this case before she was appointed to the Ninth Circuit. In denying American Empire's motion for summary judgment, Judge Rymer found that the American Empire policy "is organized in such a way as to have the effect of making the alleged exemption of rented equipment obscure." We believe that this view is more accurate than the district court's November 16, 1989 decision on the same issue.
 
 
 38
 Second, California law requires that an exclusionary clause in an insurance policy be "plain and clear." Id. at 207 (quoting Ponder, 145 Cal.App.3d at 719, 193 Cal.Rptr. at 637). This is simply a corollary to the general rule that any ambiguity must be resolved in favor of coverage. The rental exclusion in American Empire's policy is ambiguous. A fair reading of the paragraph indicates that anything used by Astrophysics to display or sell their product (e.g., a vending machine) is not included in the policy. It is not plain and clear that all products of Astrophysics must be sold rather than rented to be covered under the policy. Indeed, a layman could easily read the policy to cover anything "manufactured, ... handled, or distributed by the named insured" in addition to anything "sold" by the insured. Therefore, the exclusion must be interpreted strictly against American Empire and in favor of coverage for Astrophysics.
 
 
 39
 In short, we find that American Empire's rental exclusion is inconspicuous and ambiguous and that the policy must be construed in favor of coverage in this case. We reverse the district court's decision on this issue and grant partial summary judgment in favor of Astrophysics against American Empire.
 
 3. The Western Employers Policy
 
 40
 It is undisputed that the umbrella policy issued to Astrophysics by Western Employers covers any damages which exceed the policy limits of the American Casualty and American Empire policies. If either the American Casualty or the American Empire policy offers coverage, Western Employers is responsible for any excess. The issue on appeal is whether the Western Employers policy provides primary coverage if there is no coverage under the American Casualty and American Empire policies.
 
 
 41
 Both Astrophysics and American Casualty argue that the Western Employers policy "drops down" to become primary coverage in the event that the American Casualty and American Empire policies are inapplicable. We reject this argument for two reasons.
 
 
 42
 First, Astrophysics' liabilities in this case are covered under both the American Casualty and American Empire policies. Therefore, it is irrelevant whether the Western Employers coverage drops down in this case to become primary coverage when the other policies are inapplicable.
 
 
 43
 Second, the Western Employers policy contains the following endorsement:
 
 
 44
 It is agreed that the policy shall not apply to any liability for personal injury or property damage arising out of foreign liability unless such liability is covered by valid and collectible underlying insurance....
 
 
 45
 Although we agree with Astrophysics and American Casualty that the term "foreign liability" is ambiguous, there is no way to interpret this language in favor of coverage. The term "foreign liability" must be given some meaning, and a layman in the United States commonly understands "foreign" to mean outside the United States. See, e.g., Webster's Ninth New Collegiate Dictionary 483 (Merriam-Webster 1984) (foreign means "situated outside a place or country; esp: situated outside one's own country"). In this case, all events leading to the crash of flight 182 occurred outside the United States, and the underlying damage suits were filed in Canada. Contrary to the suggestions of Astrophysics and American Casualty, Canada is a foreign country. Therefore, the Western Employers exclusion is enforceable in this case, and Western Employers has no primary liability for damages attributed to Astrophysics.
 
 CONCLUSION
 
 46
 The district court correctly applied California law in determining that American Casualty's territory restriction is ambiguous and must be interpreted in favor of coverage. The district court erred, however, in its application of California law to American Empire's rental exclusion. The rental exclusion is inconspicuous and ambiguous and must be interpreted in favor of coverage. Finally, the court correctly ruled that the Western Employers policy does not provide coverage in this case. Therefore, the judgment of the district court is AFFIRMED in part and REVERSED in part.[3]
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 At the time the equipment was supplied to Air India, the manufacturer was known as Scanray Corporation. However, Scanray Corp. merged with Astrophysics in October 1987, with the resulting corporation retaining the Astrophysics name
 
 
 [2]
 Astrophysics argues that paragraph two is ambiguous because it does not specifically refer to any geographical area. Astrophysics points to paragraph three which specifically refers to paragraph one for its meaning. Although the meaning of paragraph two would have been more clear if it specifically referred to paragraph one, taken in context, paragraph two refers back to paragraph one for its meaning. Therefore, we do not find the kind of ambiguity in paragraph two which would demand interpretation in favor of Astrophysics. Moreover, given our holding that paragraph four is ambiguous, this issue is not determinative
 
 
 [3]
 Each party shall bear its own costs on appeal