[No. G012152. Fourth Dist., Div. Three. Aug. 31, 1993.]

DAVID A. VAILLETTE, Plaintiff and Appellant, v.
FIREMAN'S FUND INSURANCE COMPANY, Defendant and
Respondent.

**COUNSEL**

Larry L. Curran for Plaintiff and Appellant.

Haight, Brown & Bonesteel, Roy G. Weatherup, Denis J. Moriarty and Ronald B. Axelrod for Defendant and Respondent.

## OPINION

**SONENSHINE, J.**—David A. Vaillette appeals from a judgment of dismissal of his breach of contract/bad faith/fraud action against Fireman's Fund Insurance Company (Fireman's Fund). The case was dismissed after the court sustained the insurer's demurrer to Vaillette's second amended complaint without leave to amend.

The appeal presents the following issue: When an insurer pays a plaintiff policy limits and the plaintiff covenants not to execute on any judgment against the insured or to assert any further claim arising out of the subject incident, may the plaintiff subsequently recover from the insurer costs of suit, including statutory attorney fees? The answer is no. The subject agreement is not amenable to any reasonable interpretation that would allow the plaintiff to seek further compensation of any nature from the insurer.

### FACTUAL AND PROCEDURAL BACKGROUND

In March 1984, Vaillette was rendered a quadriplegic and his passenger, James Downing, was killed when a drunk driver, Hugh Robinson,[1] crashed his limousine into the rear end of Vaillette's vehicle. Vaillette sued Robinson and numerous other defendants. On March 31, 1986, one of Robinson's insurers, Fireman's Fund, agreed to pay Vaillette $1 million in exchange for Vaillette's covenant not to execute on any potential judgment or prosecute against the insured or insurer any further claim arising from the accident.

Because we must construe the effect of the 14-page document, we set out its relevant terms at considerable length. The agreement provides:

(1) "This Agreement for Policy Payment and Covenant Not to Execute . . . is entered into between David A. Vaillette . . . and all of the Insureds of [certain] Fireman's Fund Insurance policies . . . and Fireman's Fund Insurance Companies."

(2) "The Policy was in full force and effect at all relevant times . . . covering the liability of the Insureds . . . for a total of One Million, One Hundred Thousand Dollars . . . which coverage is the subject of this Agreement. Upon completion of this Agreement the Policy funds available for distribution will be exhausted. . . ."

(3) "[P]ursuant to agreement by counsel for all parties, the sum of Fifty Thousand Dollars . . . was 'advanced' by and through Fireman's Fund Insurance Companies under the Policy to Vaillette."

---

[1] Robinson was convicted of vehicular manslaughter and two counts of felony drunk driving.

(4) "On or about March 13, 1986, a hearing concerning the available funds under the Policy was held . . . for the specific purpose of allocating the funds available under the policy between Vaillette and the Downing heirs, . . . and as a result of the recommendation of the [judge] Vaillette has and does accept the sums herein specified and the Downing heirs jointly have agreed to accept the sum of One Hundred Thousand Dollars . . . from the Policy proceeds as their . . . allocated shares."

(5) "This Agreement between Vaillette and the Insured is entered into for the purpose of the payment of the funds herein stated to Vaillette and to protect the Insureds' . . . personal assets and other things of money's worth from the possibility of Vaillette obtaining a Judgment in excess of all presently known insurance coverage and thereby subjecting said Insureds, and each of them, to payment of any such Judgment with their . . . personal assets."

(6) "[I]n consideration of the mutual covenants, promises, conditions and terms herein set forth the parties hereto, Vaillette, the Insureds, and Fireman's Fund Insurance Companies, agree as follows: [¶] A. Vaillette shall receive the following consideration: [¶] (1) An advance of Four Hundred Fifty Thousand Dollars . . . ; [¶] (2) Payments of Four Thousand Five Hundred Thirty-Eight Dollars . . . per month, for life, with a ten . . . year guarantee . . . . [¶] (3) The reservation of any and all rights Vaillette has or may have to the proceeds of any and all other Insurance policies of the Insureds, or any of them, excepting only the Policy here. [¶] (4) The reservation of any and all rights Vaillette has or may have against any and all other persons, entitles, [sic] or otherwise, who are not Insured."

(7) Vaillette "covenants and agrees that at no time will Vaillette . . . seek to execute on any Judgment in the aforesaid [action], and on any potential claim, including Wrongful Death, arising out of the acts and conduct set forth in paragraph 1 above, if Judgment is rendered against the Insureds . . . except as is specifically reserved to Vaillette herein."

(8) ". . . [T]he acceptance of the benefits of the Policy herein is accepted as a Policy payment and partial satisfaction as against any total damages sustained by Vaillette for his injuries and damages as a result of the occurrences and events as are set forth [in] the Lawsuit as may be amended from time to time."

(9) "Vaillette intends to and will continue to pursue Vaillette's interests by way of continuing to prosecute the Lawsuit."

(10) "Nothing herein is intended to waive the rights of Fireman's Fund Insurance Companies to seek reimbursement for defense fees and costs from other applicable insurance policies."

(11) ". . . Vaillette agrees to execute this Agreement with the Insureds, and each of them, and with Fireman's Fund Insurance Companies."

(12) "[I]n making this Agreement it is understood and agreed that Vaillette relies wholly upon Vaillette's own judgment, belief, and knowledge of the nature, extent and duration of Vaillette's injuries, and that Vaillette has not been influenced to any extent whatsoever in making this Agreement by any representations or statements regarding said injuries, or regarding any other matters, made by the Insureds, or any of them, or by Fireman's [F]und Insurance Companies . . . ."

(13) "[S]uch payment is made by compromise and as a Policy payment and partial satisfaction toward any Judgment Vaillette may obtain."

(14) "This Agreement shall be construed without regard to the draftor [sic] of the same and shall be construed as though all parties hereto participated equally in the drafting of this Agreement, and shall be construed pursuant to the laws of the State of California."

(15) "Each party hereto states that they . . . have carefully read the foregoing Agreement and know the contents thereof, that they . . . have been advised by legal counsel of their . . . choice, and that they . . . sign this Agreement [freely], and that it is their . . . intention to be legally bound by this Agreement. Except as otherwise agreed to herein, nothing contained in this Agreement and/or by the execution hereof shall be deemed a waiver, release, discharge, dismissal, and/or admission by Vaillette as to the Insureds, Fireman's Fund Insurance Companies, or any of them, and Vaillette retains and reserves any and all other rights and interests he has or may have in the Lawsuit and/or to other actions he may and does have as to any person and/or entity."

Vaillette's action against Robinson proceeded to trial. In January 1989, the court awarded him nearly $3.5 million in damages. On Vaillette's motion, it further allowed him as part of his costs more than $1.2 million in attorney fees pursuant to Code of Civil Procedure section 1021.4.[2]

Vaillette then filed the suit out of which this appeal arises, naming, inter alia, Fireman's Fund, Robinson and Robinson's other insurers, State Farm

---

[2]In 1983, the Legislature enacted Code of Civil Procedure section 1021.4 to implement the Crime Victim Restitution Program. The statute provides: "In an action for damages against a defendant based upon that defendant's commission of a felony offense for which that defendant has been convicted, the court may, upon motion, award reasonable attorney's fees to a prevailing plaintiff against the defendant who has been convicted of the felony."

All further statutory references are to the Code of Civil Procedure unless otherwise stated.

The *Vaillette* v. *Robinson* G008290 (nonpub. opn.) action was the subject of an appeal in which our unpublished opinion was filed February 28, 1991. In that appeal, we held the court

Mutual Automobile Insurance Company (State Farm), Industrial Indemnity Company (Industrial Indemnity) and Aetna Casualty & Surety Company (Aetna). He alleged the compromise agreement allowed him not only to proceed with his lawsuit through judgment, but to recover his costs, including attorney fees, and interest from Fireman's Fund. He stated four theories of recovery against the insurer based on its refusal to pay these items.

The court sustained the demurrer of Fireman's Fund to Vaillette's second amended complaint without leave to amend. In dismissing the action, the trial court found the March 31, 1985, agreement barred Vaillette from recovering anything further from the insurer.

## DISCUSSION

■ There is a strong policy in favor of a hearing on the merits (*Shamblin v. Brattain* (1988) 44 Cal.3d 474, 478 [243 Cal.Rptr. 902, 749 P.2d 339]), and in reviewing an order sustaining a demurrer without leave to amend, we accept as true all properly pleaded facts. (*Tameny* v. *Atlantic Richfield Co.* (1980) 27 Cal.3d 167, 170 [164 Cal.Rptr. 839, 610 P.2d 1330, 9 A.L.R.4th 314].) Where there is a reasonable possibility an amendment will cure a defective pleading, it is ordinarily an abuse of discretion to deny a party the chance to cure the defect (*Greenberg* v. *Equitable Life Assur. Society* (1973) 34 Cal.App.3d 994, 998 [110 Cal.Rptr. 470]); however, leave to amend should *not* be granted where, in all probability, amendment would be futile. (*La Jolla Homeowners' Assn.* v. *Superior Court* (1989) 212 Cal.App.3d 1131, 1141 [261 Cal.Rptr. 146].)

The gravamen of Vaillette's second amended complaint is his allegation that in the agreement with Robinson and Fireman's Fund, he reserved the right to obtain from them his costs of the lawsuit and interest accruing on any judgment. On this basis, he claims Fireman's Fund wrongfully refused to pay him $1,284,540.54 in attorney fees in the underlying action, $344,600 additional attorney fees awarded to him in the appeal therefrom, interest on both of those amounts, and $900,000 interest on the underlying judgment for damages against Robinson. Alleging a conspiracy between the insurer and its insured, he attempts to recover against Fireman's Fund on theories of fraud, breach of contract and breach of the implied covenant of good faith and fair dealing with respect to the agreement and the policy.

---

did not abuse its discretion in imposing attorney fees approximating a 40 percent contingency fee. We declined to issue an advisory opinion on whether attorney fees were covered under supplemental pay provisions of the various insurance policies, but we decided the attorney fees should be classified as costs, not as part of Vaillette's personal injury damages. We granted Vaillette his costs on appeal, including attorney fees pursuant to section 1021.4. On Vaillette's subsequent presentation of his cost bill to the trial court, he was awarded an additional $344,600 in appellate attorney fees.

The dispositive issue is whether the agreement is amenable to the interpretation urged by Vaillette. ■■■ A settlement agreement is to be construed under the same rules that apply to any other contract. (*Adams* v. *Johns-Manville Corp.* (9th Cir. 1989) 876 F.2d 702, 704.) When, as here, material facts are not in dispute, contract interpretation is a question which the appellate court determines independently. (*Parsons* v. *Bristol Development Co.* (1965) 62 Cal.2d 861, 865 [44 Cal.Rptr. 767, 402 P.2d 839].) Ordinarily, the words of the document are to be given their plain meaning and understood in their common sense; the parties' expressed objective intent, not their unexpressed subjective intent, governs. (*Beck* v. *American Health Group Internat., Inc.* (1989) 211 Cal.App.3d 1555, 1562 [260 Cal.Rptr. 237]; Civ. Code, §§ 1636, 1638.)

■■ Under the express provisions of the agreement, in exchange for an advance of $450,000, an annuity paying him $4,538 a month for life, and a reservation of his right to the proceeds of any other insurance policies and his rights against any persons not insured by Fireman's Fund, Vaillette agreed to the following: (1) Fireman's Fund's payment of the sum would *exhaust the policy funds available for distribution*, and (2) at *no time* would he "seek to execute *on any Judgment* in the aforesaid [action], and *on any potential claim . . .* arising out of the acts and conduct" of Robinson, "*except as is specifically reserved* to Vaillette here." (Italics added.) The agreement does *not* specifically reserve to Vaillette the right to recover costs or interest on the judgment;[3] it contains only a *general* reservation of "any and all other rights and interests [Vaillette] has or may have in the Lawsuit and/or to other actions he may and does have as to any person and/or entity."

The trial court found no language in the agreement supporting Vaillette's allegation that "[t]he Agreement specifically reserves to VAILLETTE any and all rights against said Defendants which are not expressly bargained for [and] specifically set forth in the Agreement including, without limitation, VAILLETTE['s] expressed intention and right to proceed with the lawsuit through judgment and obtain costs therefor and recover the same from said Defendants, as well as interest on the judgment." The court said: "My reading of that contract leaves me with just a very clear understanding and reading that all claims of any nature are resolved and settled and that no

---

[3]The sole reference to fees and costs in the agreement is with regard to the rights of the *insurer:* "Nothing herein is intended to waive the rights of Fireman's Fund Insurance Companies to seek reimbursement for defense fees and costs from other applicable insurance policies."

further claim of any nature on that policy against Fireman's will be permitted."[4]

Vaillette concedes, as he must, that the agreement is silent on the subject of costs and fees. However, relying on *Folsom* v. *Butte County Assn. of Governments* (1982) 32 Cal.3d 668 [186 Cal.Rptr. 589, 652 P.2d 437], he argues the silence must be construed in his favor, i.e., because there is no specific mention of these items, they were not encompassed within the agreement and are thus recoverable.

In *Folsom,* the issue was whether a settlement agreement silent as to costs and attorney fees "operate[d] as a merger and bar of all preexisting claims, depriving the trial court of jurisdiction to award costs and [] attorney fees under Code of Civil Procedure section 1021.5." (*Folsom* v. *Butte County Assn. of Governments, supra,* 32 Cal.3d 668, 671.) Section 1021.5 conditionally provides for an award of attorney fees to a successful party in any action which has resulted in the enforcement of an important right affecting the public interest. The plaintiffs in *Folsom* were elderly, disabled, of limited income and dependent on public transportation. They sought declaratory and injunctive relief to prevent the county from allocating certain public funds to street and road projects "until 'such time as an adequate public transportation system is operating which reasonably meets the public transit needs in . . . Butte County.' " (32 Cal.3d at p. 673.) They also sought costs and statutory attorney fees.

Under a settlement agreement, some of the *Folsom* defendants promised to establish four new transit systems and the plaintiffs promised, inter alia, to

---

[4]Other apt observations of the trial court appear throughout the record, most notably in the minutes of March 26, 1992, at the hearing of Robinson's demurrer to Vaillette's third amended complaint. The court stated: "The plaintiff's first cause of action seems to be based upon the contention that Robinson has breached the terms . . . of the [agreement]. This breach is alleged to have occurred in Robinson's 'failing to pay the costs, including attorneys' fees, and interest' on the judgment . . . ; in his further 'wrongfully and tortuously' [*sic*] denying Vaillette's claims; and in his failure to assist Vaillette in pursuing these claims. . . . There are at least two basic flaws in this argument. First, the parties' settlement agreement contains no language referencing any such right for Vaillette or any such obligation of Robinson. If Vaillette or his counsel believe that the agreement provides for future recovery of these costs and fees, they can point to no express language to that effect anywhere in . . . the contract. If they held this belief at the time the agreement was being negotiated, then their failure to memorialize it would be very puzzling. [Indeed, we find that failure doubly puzzling in light of the fact that Fireman's Fund *expressly* reserved its rights in this regard.] Second, this settlement agreement does contain Vaillette's express covenant not to execute 'on any Judgment' in the subject case or 'on any potential claim' arising from the underlying accident. That promise is directly contrary to the claim plaintiff now asserts. This lawsuit is the functional equivalent of an execution on the prior judgment." In sustaining the demurrer, the court added, "There is a simple disagreement here about the parties' rights under their prior settlement agreement, and more pleading will not change the terms of that contract."

file a dismissal with prejudice as to those defendants within one week of the date the last of the new transit systems had initiated service. Ten days after the settlement agreement, plaintiffs filed a cost bill and a motion for attorney fees under section 1021.5. The trial court made the award, declaring " 'this action has resulted in the enforcement of an important right affecting the public interest in that, inter alia, public transit funds have been allocated to meet public transit needs in Butte County; that a significant benefit has been conferred on both a large class of persons and on the general public; [and] that the necessity and financial burden of private enforcement are such as to make this award of attorney's fees appropriate.' " (*Folsom* v. *Butte County Assn. of Governments, supra,* 32 Cal.3d 668, 676, fn. omitted.)

The Supreme Court affirmed the orders granting costs and attorney fees. It stated: "Compromise agreements '. . . settle only such matters and differences as appear clearly to be comprehended in them by the intention of the parties and the necessary consequences thereof, and do not extend to matters which the parties never intended to include therein, although existing at the time.' [Citations.] Thus they ordinarily conclude all matters put in issue by the pleadings—that is, questions that otherwise would have been resolved at trial. [Citation.] They do not, however (absent affirmative agreement of the parties), conclude matters incident to the judgment that were no part of the cause of the action." (*Folsom* v. *Butte County Assn. of Governments, supra,* 32 Cal.3d 668, 677.)

The *Folsom* court noted costs and statutory attorney fees are an incident of the judgment, not a part of it. (*Folsom* v. *Butte County Assn. of Governments, supra,* 32 Cal.3d 668, 677.) Thus, such fees may "properly [be] awarded after entry of a stipulated judgment, unless expressly or by necessary implication excluded by the stipulation." (*Id.* at p. 678.) Since the *Folsom* plaintiffs had prevailed and enforced important rights, the award of section 1021.5 attorney fees was proper.

*Folsom* is distinguishable. There, the plaintiffs promised to dismiss their lawsuit in exchange for the defendants' promise to establish certain new transit systems. (*Folsom* v. *Butte County Assn. of Governments, supra,* 32 Cal.3d 668, 680-681.) Here, Vaillette promised not to execute on the judgment or on *any potential claim* arising out of Robinson's conduct.[5] Vaillette's subsequent claim to attorney fees arose *solely* out of Robinson's felony drunk driving conviction. Moreover, Vaillette covenanted not to

---

[5]In his brief, Vaillette presents an extended argument that the costs are incident to the judgment, not a part of it, and therefore the covenant not to execute on the judgment is not a bar to his seeking costs. The point is irrelevant in light of Vaillette's additional promise regarding "any potential claim."

execute on the judgment or any potential claim "except as is specifically reserved," and there is no specific reservation in the agreement.[6] Thus, while in *Folsom* the issue of costs and fees did not "appear clearly to be comprehended in [the compromise agreement] by the intention of the parties and the necessary consequences thereof" (*id.* at p. 677), and was not "expressly or by necessary implication excluded by the stipulation" (*id.* at p. 678), here, the issue of costs and fees appears clearly to be comprehended in the agreement; by necessary implication, Vaillette's covenant not to execute *includes* seeking to pursue any claim to costs and fees.[7]

When asked at oral argument to identify those provisions of the agreement which Vaillette construed as retaining to him his right to recover costs and attorney fees, counsel referred to two provisions. The first, paragraph 8, subparagraph (A)(4), reserves to Vaillette "any and all rights [he] has or may have against any and all other persons, entitles [*sic*], or otherwise, who are not Insureds." Counsel contends that because the final phrase—"who are not Insureds"—does not add "or the insurer," *we should construe the language to exclude* Fireman's Fund from the benefits of the covenant and *include* it within the world at large as to which Vaillette reserved his rights. But to read the paragraph as suggested by Vaillette would be an absurdity: Carried to its logical conclusion, the proposition would support a claim by Vaillette that his covenant not to execute had nothing at all to do with Fireman's Fund and left him free to recover the judgment itself from the insurer.[8] Vaillette's piecemeal approach impermissibly ignores the context. Fireman's Fund is a party to the agreement. While paragraph 8, subparagraph (A)(4) does not

---

[6]Neither in his opening brief nor in his reply brief did Vaillette allude to or attempt to interpret the language of the agreement requiring him to "specifically reserve[]" to himself any right to pursue further claims against the insureds.

[7]Even if *Folsom* could not be distinguished on the basis of the language of the agreement, it would still not avail Vaillette. In *Folsom*, public policy was served by allowing plaintiffs to recover attorney fees under section 1021.5: The action enforced an important right to public transportation. Here, even assuming Vaillette's claim to attorney fees had survived the agreement, payment of the fees by an insurer would *contravene* public policy.

California Constitution, article I, section 28, subdivision (b) (the Victims' Bill of Rights) states the "unequivocal intention" of the People of the State of California that persons injured by criminal activity will obtain restitution for losses *from the persons convicted of the causative crimes.* Section 1021.4 authorizes the court to award reasonable attorney fees to a prevailing plaintiff *against the defendant convicted of the felony that has caused the plaintiff's loss.* "Restitution . . . may serve the salutary purpose of making a criminal understand that he [or she] has harmed not merely society in the abstract but also individual human beings, and that he [or she] has a responsibility to make them whole." (*People* v. *Richards* (1976) 17 Cal.3d 614, 620 [131 Cal.Rptr. 537, 552 P.2d 97], superseded by statute on other grounds as stated in *People* v. *Dailey* (1991) 235 Cal.App.3d Supp. 13 [286 Cal.Rptr. 772].) The purpose to be achieved by section 1021.4 would be defeated if the felony drunk driver could pass the attorney fees penalty along to his or her insurer.

[8]Indeed, Vaillette clearly believes he has *some* rights against Fireman's Fund with respect to the judgment, because he claims entitlement to nearly $1 million in interest *on the*

specifically include the insurer, neither does it specifically *exclude* the insurer, and in light of the agreement taken as a whole, we may not and will not interpret it to do so.

The second provision, paragraph 18, is a general reservation of rights: "Except as otherwise agreed to herein, nothing contained in this Agreement and/or by the execution hereof shall be deemed a waiver, release, discharge, dismissal, and/or admission by Vaillette as to the Insureds, Fireman's Fund Insurance Companies, or any of them, and Vaillette retains and reserves any and all other rights and interests he has or may have in the Lawsuit and/or to other actions he may and does have as to any person and/or entity." Vaillette asks us to construe this paragraph as expressing his intention to exclude the issue of costs and attorney fees from the agreement, again with regards to his rights against the *insurer*. But, as with paragraph 8, subparagraph (A)(4), there is no express exclusion and we would do violence to the agreement were we to read one into it, particularly because Vaillette agreed not to execute on any potential claim "*except as is specifically reserved to Vaillette here.*" As we have already noted, there is no specific reservation referring to costs and attorney fees.

In his brief, Vaillette makes other contentions regarding the language of the agreement and why it must be construed in his favor. For instance, he argues: (1) the paragraph referring to exhaustion of policy funds is only a recital, therefore Vaillette has never agreed to or admitted such exhaustion; (2) the word "funds" is a term of art meaning only the proceeds of liability coverage, and not including any incidental sums such as costs; (3) the words "any potential claim" immediately precede the words "including Wrongful Death," thus the word "claim" must be read to bar only separate actions for additional injuries that might accrue, not to bar Vaillette's assertion of the right to recover costs; and (4) the agreement expressly provides that Vaillette neither makes legal assertions nor waives his rights to legal interpretation of certain provisions. These are by way of example; there are other propositions of the same ilk. They bear little discussion. Borrowing from *Gallo* v. *Superior Court* (1988) 200 Cal.App.3d 1375, 1380 [246 Cal.Rptr. 587], we note: "[These are arguments] that only a lawyer could love; [they rest] on semantics rather than on reason."

If Vaillette intended to reserve the right to recover attorney fees, he should have said so, as did Fireman's Fund. The true, subjective, but unexpressed intent of a party is immaterial and irrelevant. (See *City of Mill Valley* v. *Transamerica Ins. Co.* (1979) 98 Cal.App.3d 595, 602-603 [159 Cal.Rptr. 635].)

---

*judgment*! But he has not argued the legal basis for such a claim, and we can conceive of none.

In the light of reason and a common understanding of plain English, we conclude nothing in the agreement either gives or reserves to Vaillette the right to recover from Fireman's Fund the moneys sought in this action. Having given up his right to recovery over and above the lump sum and lifetime annuity he received from Fireman's Fund, Vaillette has no cognizable claim on which to proceed against this insurer.[9] The trial court did not err in sustaining the demurrer without leave to amend.

Judgment affirmed. Fireman's Fund shall recover its costs on appeal.

Sills, P. J., and Wallin, J., concurred.

Appellant's petition for review by the Supreme Court was denied December 30, 1993.

---

[9]Since Vaillette's claims regarding the insurance policy are dependent on the validity of his claims regarding the agreement, it is unnecessary to examine the provisions of the Fireman's Fund policy.

At oral argument, counsel advised us two other appeals are pending in this action. In one, the issue is whether Vaillette may recover costs and attorney fees from State Farm.