Filed 5/23/14  Fundamental Partners v. Eggemeyer CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| FUNDAMENTAL PARTNERS, | D064252 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 73-2013-00029777-CU-SL-CTL) |
| JOHN M. EGGEMEYER, III et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of San Diego County, Ronald S. Prager, Judge.  Affirmed.

Hulett Harper Stewart and Blake Muir Harper; The Brualdi Law Firm and John F. Keating, Jr. for Plaintiff and Appellant.

Paul Hastings and William F. Sullivan, John S. Durrant, Elizabeth C. Mueller for Defendants and Respondents White River Capital, Inc., William E. McKnight, John M. Eggemeyer, III, John W. Rose, Richard D. Waterfield, Daniel W. Porter, and Thomas C. Heagy.

Kirkland & Ellis and Eliot A. Adelson, David S. Mitchell for Defendants and Respondents Parthenon Investors IV, Coastal Credit Holdings, Inc., and Coastal Credit Merger Sub, Inc.

White River Capital, Inc. (White River), was a publicly traded Indiana corporation headquartered in San Diego County. White River was merged with Coastal Credit Holdings, Inc. Appellant Fundamental Partners is a former shareholder of White River. Fundamental Partners sued respondents White River and its former directors William E. McKnight, John M. Eggemeyer, III, John W. Rose, Richard D. Waterfield, Daniel W. Porter, and Thomas C. Heagy. In addition, Fundamental Partners sued Parthenon Capital Partners and its affiliates, including Parthenon Investors IV, LP, Coastal Credit Holdings, Inc., and Coastal Credit Merger Sub, Inc. (collectively Parthenon). The complaint alleged causes of action for breach of fiduciary duty and aiding and abetting.

Fundamental Partners appeals a judgment entered after the trial court sustained a demurrer without leave to amend in favor of respondents, and contends the trial court erroneously ruled: (1) Fundamental Partners lacked standing to bring derivative causes of action challenging Parthenon's acquisition by merger of White River; (2) Indiana's dissenters' rights statutes barred this post-merger shareholder lawsuit; and (3) as a matter of law, Fundamental Partners cannot state a breach of fiduciary duty claim. We affirm the judgment.

2

FACTUAL AND PROCEDURAL BACKGROUND

In its operative "second amended class action complaint" (capitalization omitted), Fundamental Partners alleged White River "was a specialized subprime auto finance company engaged in acquiring subprime auto receivables from both franchised and independent automobile dealers which have entered into contracts with purchasers of typically used, but some new, cars and light trucks." Fundamental Partners alleged causes of action for breach of fiduciary duty against White River and the individual defendants, and a cause of action for aiding and abetting against Parthenon. Specifically, Fundamental Partners alleged the individual defendants: (1) approved the merger of White River for $79.5 million despite receiving a higher bid, and notwithstanding the fact the directors had valued White River at $88.2 million; (2) permitted Parthenon to reduce the merger cost by up to 55 cents per share if the targeted net expenses were exceeded in certain circumstances; (3) stood to gain financially from the merger; in particular, Eggemeyer would receive over $1.2 million for his unvested performance shares, and McKnight would receive "hundreds of thousands of dollars that he would not otherwise receive at this time," and also keep his job; (4) "dissuaded any superior bid for [White River] by causing White River to agree to pay Parthenon a termination fee of $3,975,000—which amounts to an unusually high 5 [percent] of the total consideration payable to shareholders—in the event White River enters into a superior transaction"; (5) benefitted personally, including by obtaining indemnification for acts or omissions occurring before the consummation of the sale agreement and for six years afterwards; and (6) filed a deficient proxy statement with the SEC that "misrepresented and/or

3

omitted material information."[1]

Fundamental Partners also alleged that Parthenon "aided and abetted the individual defendants in the breaches of their fiduciary duties to White River's shareholders by, among other things, (a) incentivizing McKnight to favor a sale to it by continuing his employment following Parthenon's acquisition of [White River], (b) negotiating a sale of White River to Parthenon with knowledge of the conflicts of interest and the inadequate price the individual defendants have agreed to as a result of the same, and (c) requiring White River to pay a termination fee of $3,975 million in the event [White River] enters into a superior agreement to be acquired—which amounts to approximately [5 percent] of the total transaction value." (Some capitalization omitted.)

White River, the individual defendants and Parthenon demurred to the second amended complaint. White River also moved to strike allegations in the second amended complaint relating to the directors' breach of fiduciary duties caused by their selling White River for insufficient consideration, inadequate price, and on the condition that White River pay a termination fee. Fundamental Partners opposed the demurrer and the motion to strike. It argued its claims were direct and not derivative; Indiana law does not bar postmerger lawsuits; and it had pleaded sufficient facts to support the causes of action for breach of fiduciary duty. Fundamental Partners did not seek leave to amend its complaint.

---

[1] We grant Fundamental Partners' request for judicial notice of its disclosures in Securities and Exchange Commission documents that were filed in the trial court, which took judicial notice of them.

The trial court sustained the demurrer and ruled the motion to strike was moot, acknowledging the parties had agreed Indiana law applied here.[2]  It ruled Fundamental Partners lacked standing because its claims were derivative and not direct; Indiana law barred shareholder postmerger litigation; and there was no actionable claim under a provision of the Indiana Constitution stating that " 'every person, for injury done to him in his person, property or reputation, shall have remedy by due course of law.' "  It further ruled that under Indiana law, directors deciding on a merger need not maximize shareholder value above all other considerations.

DISCUSSION

I. *Standard of Review*

"On appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend, . . . [w]e give the complaint a reasonable interpretation, reading it as a whole and its parts in their context.  [Citation.]  Further, we treat the demurrer as admitting all material facts properly pleaded, but do not assume the truth of contentions, deductions or conclusions of law."  (*City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 865.)  We review the complaint de novo and determine whether the pleading alleges facts sufficient to state a cause of action.  (*McCall v. PacifiCare of Cal., Inc.* (2001) 25

_____

2      California's Corporations Code section 2116 provides that the directors of a foreign corporation transacting intrastate business are liable to the corporation and its shareholders for violations of official duty according to any applicable laws of the state or place of incorporation or organization, whether committed or done in California or elsewhere.

5

Cal.4th 412, 415.) When a demurrer is sustained without leave to amend, "we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse." (*City of Dinuba*, at p. 865.) A plaintiff may seek leave to amend for the first time on appeal. (Code Civ. Proc., § 472c, subd. (a); *City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 746; *San Diego City Firefighters, Local 145, v. Board of Administration etc.* (2012) 206 Cal.App.4th 594, 606.) If the judgment is correct on any ground stated in the demurrer, we will affirm it regardless of the trial court's stated reasons. (*San Diego City Firefighters*, at p. 605; *Schuster v. Gardner* (2005) 127 Cal.App.4th 305, 312.)

## II. *Fundamental Partners' Claims are Derivative*

Fundamental Partners, relying primarily on an Indiana case dealing with a closely-held corporation (*G&N Aircraft v. Boehm* (Ind. 2001) 743 N.E. 2d 227), contends it had standing to pursue this lawsuit because its claims were direct and not derivative. We disagree and instead rely on a case dealing with a publicly traded corporation that describes the features of a derivative action: "On its face, plaintiffs' complaint alleges a near-classic derivative injury: a third party . . . allegedly caused harm to a corporate entity . . . resulting in a diminution in the value of the corporation's stock, which in turn caused the plaintiffs' harm." (*Massey v. Merrill Lynch & Co., Inc.* (Ind. 2006) 464 F.3d 642, 647, & fn. 2.)

The distinction established in Indiana law between derivative and direct actions has been explained as follows: "Indiana law adheres to the well-established corporate law principle 'that shareholders of a corporation may not maintain actions at law in their

6

own names to redress an injury to the corporation even if the value of their stock is impaired as a result of the injury.' [Citations.] That is, '[g]enerally speaking, the stockholders of a corporation for the purposes of litigation growing out of the relations between the corporation and a third person, surrender their personal or individual entities to the corporation in which they are stockholders.' [Citation.] As a result, when a corporation suffers injury, either from corporate insiders or . . . from a third party, it is the corporate entity—not the individual shareholders—who retains the cause of action. [Citation.] As a result, any claims that belong to the corporation must be made derivatively (i.e., brought in the name and on behalf of a corporation), and any resulting recovery flows to the corporate coffers. [¶] In contrast, a shareholder may bring a direct action (i.e., an action on behalf of an individual shareholder or a class of shareholders) to vindicate rights that belong to shareholders. For instance, a shareholder can generally bring an action to enforce voting rights, compel dividends, prevent oppression or fraud against minority shareholders, inspect corporate books, or compel shareholder meetings. [Citation.] In addition, Indiana law allows a shareholder to bring a direct action when the shareholder has suffered a distinct personal injury that is different from the type experienced by the other shareholders. [Citations.] For instance, a shareholder may maintain a direct action against a third party who harmed a corporation if the shareholder had a separate contractual agreement with the third party or the corporation that exposed the shareholder to a unique harm, different than general diminution of share price, such as personal exposure on a loan guarantee." (*Massey v. Merrill Lynch & Co., Inc.*, *supra*, 464 F.3d at pp. 645-646.)

Sound public policy considerations support the rule that shareholders may not maintain individual lawsuits to redress an injury to the corporation:  " 'It is recognized that authorization of shareholder actions in such cases would constitute authorization of multitudinous litigation and disregard for the corporate entity.  Sound policy considerations have been said to require that a single action be brought rather than to permit separate suits by each shareholder even when the corporation and the shareholder are the same.' "  (*Hubbard v. Tomlinson* (Ind. Ct.App. 2001) 747 N.E. 2d 69, 71.)

In the context of closely-held corporations, the Indiana Supreme Court "has created an exception to the rule preventing shareholders from maintaining actions in their own names."  (*Hubbard v. Tomlinson*, *supra*, 747 N.E. 2d at p. 71.)  The exception states: "In the case of a closely held corporation, the court in its discretion may treat an action raising derivative claims as a direct action, exempt it from those restrictions and defenses applicable only to derivative actions, and order an individual recovery, if it finds that to do so will not (i) unfairly expose the corporation or the defendants to a multiplicity of actions, (ii) materially prejudice the interests of creditors of the corporation, or (iii) interfere with a fair distribution of the recovery among all interested persons."  (*Barth v. Barth* (Ind. 1995) 659 N.E. 2d 559, 562.)

The exception is inapplicable here because Fundamental Partners is a publicly traded company, and the gravamen of its lawsuit relates to "[Respondents'] willful misconduct and recklessness in causing White River to be sold to Parthenon in a transaction which protects and advances their own interests to the detriment of [Fundamental Partners] and [White River's] other public shareholders."  Fundamental

8

Partners also alleged respondents willfully or recklessly concealed material information from the shareholders in the proxy statement. We conclude the court did not err in finding that Fundamental Partners' claims were derivative. Fundamental Partners did not allege it suffered a distinct harm separate from general diminution of share price. Therefore, any purported harm was borne by all shareholders and any resulting benefit would belong to the corporation.

Our conclusion applies equally to the trial court's decision to sustain the demurrer as to Fundamental Partner's claim that Parthenon engaged in aiding and abetting. As noted, Parthenon had joined in White River's demurrer and argued that Fundamental Partners' claims were derivative, not direct.

III. *Indiana Law Bars Postmerger Lawsuits*

We also affirm the trial court's ruling because the Indiana Business Corporation Law (Ind. Code, Art. 1; the BCL) prohibits postmerger lawsuits. We note that the official comments to the BCL may " 'be consulted by the courts to determine the underlying reasons, purposes, and policies of the BCL' and 'be used as a guide in its construction and application.' " (*Fleming v. International Pizza Supply Corp*. (Ind. 1997) 676 N.E. 2d 1051, 1054-1055 & fn 5.)

Section 23-1-44-8, subsection (a) of the BCL, which deals with the "Right to dissent and obtain payment for shares," states: "A shareholder is entitled to dissent from, and obtain payment of the fair value of the shareholder's shares in the event of, any of the following corporate actions: [¶] (1) Consummation of a plan of merger to which the corporation is a party if: [¶] (A) shareholder approval is required for the merger by

9

[statute] or the articles of incorporation; and [¶] (B) the shareholder is entitled to vote on the merger."

Section 23-1-44-8, subsection (d) of the BCL denies a dissenting shareholder the right to challenge a corporate action when the shareholder may recourse to the market and sell his shares: "A shareholder: [¶] (1) who is entitled to dissent and obtain payment for the shareholder's shares under this chapter; or [¶] (2) who would be so entitled to dissent and obtain payment but for the provisions of subsection (b); [¶] may not challenge the corporate action creating (or that, but for the provisions of subsection (b), would have created) the shareholder's entitlement."

The official comment to section 23-1-44-8, subsection (d) of the BCL states: "[The Legislature] adopted subsection (d) as a categorical statutory rule that shareholders entitled to dissenters' rights may not challenge the corporate action creating that entitlement. . . . [¶] In 1987, subsection (d) was amended to extend this categorical prohibition to shareholders who would be entitled to dissenters' rights but for the 'market exception' of subsection (b). Such shareholders, who have the ability to sell their shares in a recognized market and at a market price, also may not challenge the corporate action that (but for the 'market exception') would have created dissenters' rights."

Fundamental Partners argues: "[T]he Indiana Supreme Court has had no occasion to consider, and has not considered, the subsection (b) exemption to 'covered securities[,]' the effect, if any, of subsection (b) on the holders of publicly traded stock, or the remedies available to shareholders for director misconduct when judicial appraisal remedies are unavailable."

10

The BCL's section 23-1-44-8, subsection (b) states: "This section does not apply to the holders of shares of any class or series if, on the date fixed to determine the shareholders entitled to receive notice of and vote at the meeting of shareholders at which the merger, plan of share exchange, or sale or exchange of property is to be acted on, the shares of that class or series were a covered security under [the Securities Act of 1993, as amended.]" The official comment to subsection (b), states that subsection retains and expands the market exception to dissenters' rights, explaining: "The policy reason for this exception is that the market itself establishes both a fair price for the shares and a means by which a 'dissenting' shareholder can sell his shares for that price."

Further reinforcing the point that a dissenting shareholder of a publicly traded company may not bring a postmerger lawsuit, a case explains that "The Dissenters' Rights Statute limits shareholders aggrieved by a 'corporate proceeding and contains a so-called "Wall Street exception" that provides: "[A] dissenting shareholder of a public company has no right to challenge a corporate action in court or even to seek a dissenter's appraisal remedy (as provided for in this statute); the shareholder's exclusive remedy is to sell his or her shares on the open market. [Citation.] The rationale behind this exception is that the public market provides a mechanism whereby a dissenter could seek the 'fair value' of its shares." (Footnote omitted.) (*In re Guidant Corp. Shareholders Derivative Litigation* (S.D.Ind. March 27, 2008, No. 1:03-cv-955-SEB-WTL) [2008 WL 833502].)

In light of the official comment on BCL section 23-1-44-8, subsection (b) explaining that a dissenting shareholder's choice is to sell his shares on the market, and

11

the interpretation of that provision in *In re Guidant*, *supra*, we conclude Fundamental Partners lacked standing to pursue this derivative claim.

## IV. *No Amendment Permitted*

An appellant has the burden of showing "in what manner [it] can amend [its] complaint and how that amendment will change the legal effect of [its] pleading." (*Goodman v. Kennedy* (1976) 18 Cal.3d 335, 349.) "[L]eave to amend should *not* be granted where . . . amendment would be futile." (*Vaillette v. Fireman's Fund Ins. Co.* (1993) 18 Cal.App.4th 680, 685.) Here, neither in the trial court nor on appeal has Fundamental Partners sought leave to amend its complaint. We conclude that in light of the fact this is a derivative action, and the BCL bars Fundamental Partners from bringing a postmerger lawsuit, it cannot amend the complaint to state a viable cause of action. Having disposed of this case on the above grounds, we need not address the merits of Fundamental Partners' breach of fiduciary duty claim or its other arguments raised on appeal.

DISPOSITION

The judgment is affirmed.  Respondents are awarded costs on appeal.


                                                                    O'ROURKE, J.

WE CONCUR:


HALLER, Acting P. J.


McINTYRE, J.

13