Filed 11/21/25  Armani Investments v. Mahmoud CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| ARMANI INVESTMENTS, LLC, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> SALAH F. SALEH ELDIN MAHMOUD, <br><br> Defendant and Appellant. | B324203 <br><br> (Los Angeles County Super. Ct. No. 21VECV01076) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Valerie Salkin, Judge.  Affirmed.

Tamer Law Corp. and Steven Michael Tamer for Defendant and Appellant.

Vivoli Saccuzzo and Michael W. Vivoli for Plaintiff and Respondent.

————————————

Salah F. Saleh Eldin Mahmoud appeals from a judgment entered in favor of Armani Investments, LLC, after a bench trial in which the trial court found Mahmoud failed to establish his inability to pay rent on a commercial property owned by Armani as a result of the COVID-19 pandemic. Mahmoud concedes he stopped paying rent on the property in April 2020 but contends he was excused from paying rent because he was required only to "self-certify" his inability to pay pursuant to the County of Los Angeles COVID-19 Tenant Protections Resolution (L.A. County Res., adopted Sept. 28, 2021 (the County Resolution)). Mahmoud also argues the court erred by denying his applications to file an amended answer and cross-complaint.

Because Mahmoud did not meet his burden to show he provided the required notice to Armani of his inability to pay (by self-certification or otherwise), we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *The Lease, Complaint, and Writ of Attachment*

Armani is the owner of a commercial property located in the Panorama City neighborhood of Los Angeles. In August 2009 Armani and Mahmoud entered a five-year written lease agreement pursuant to which Mahmoud would operate a liquor store and market on the property. Although the lease terminated in 2014, Mahmoud remained in possession of the property, and in December 2017 the parties signed an amendment to the lease that terminated in November 2019. Mahmoud continued to occupy the property after expiration of the amendment and paid rent until March 2020, after which he ceased paying rent.

On August 13, 2021 Armani filed a complaint against Mahmoud alleging causes of action for breach of contract and

2

ejectment.  Armani alleged Mahmoud was in breach of the lease agreement because he had not paid rent on the property since March 2020, and it sought $95,590 in compensatory damages for the unpaid rent at the time of filing, plus any additional damages accrued during the pendency of the litigation.  Armani also sought an order for ejectment of Mahmoud from the premises. Mahmoud filed an answer to the complaint on September 16, 2021, asserting 26 affirmative defenses.  None of the affirmative defenses related to government restrictions on evictions enacted in response to the COVID-19 pandemic.

On February 3, 2022 Armani filed an application for writ of attachment seeking to attach approximately $148,000, which represented the amount of unpaid rent up to that date, plus estimated attorneys' fees and costs.  In his opposition to the application, Mahmoud argued he was protected from eviction (or any other proceeding to recover rent) by the County Resolution.

On March 3, 2022, at the hearing on Armani's application for a writ of attachment, the trial court found Armani had established the probable validity of its causes of action.  The court further found Mahmoud's arguments regarding the County Resolution were "insufficient to block the temporary, prejudgment remedy" of attachment.  The court granted the application for an attachment, issued the right to attach order, and authorized a writ of attachment on behalf of Armani.

B.     *The Motions for Leave To File a Cross-complaint and To Amend the Answer*
On June 24, 2022, less than three weeks before the scheduled trial date, Mahmoud sought leave to file a cross-complaint against Armani.  Mahmoud sought to assert causes of action for breach of the implied covenant of good faith and fair

3

dealing and violation of the County Resolution. On June 30 Mahmoud filed an ex parte application to shorten time for the court to hear his motion to amend prior to the trial date. On July 1, after hearing argument, the trial court denied the motion as untimely. The court noted the ex parte application was filed the day before the final status conference and raised the same arguments Mahmoud had unsuccessfully asserted in his opposition to the application for an attachment. The court found Mahmoud's attorney had "deliberately delayed filing the motion for leave to file a cross complaint in an effort to ambush Plaintiff."

On July 11, 2022, the day before trial was scheduled to begin, Mahmoud filed a petition for relief under Chapter 13 of the United States Bankruptcy Code, which resulted in an automatic stay of this proceeding. The bankruptcy court dismissed the proceeding on August 2, 2022 due to Mahmoud's failure to file schedules, statements, and/or a plan, and the court lifted the stay. As a result, the trial court set this case for trial on September 6, 2022.

On September 1, 2022 Mahmoud filed another voluntary petition for relief under Chapter 13 of the United States Bankruptcy Code, again resulting in an automatic stay of this proceeding. On September 28 the bankruptcy court granted Armani's motion for relief from the automatic stay. The trial court set a September 29, 2022 trial date.

The day before the trial was set to begin, Mahmoud filed an ex parte application to shorten time for the court to hear his motion for leave to amend his answer to assert affirmative defenses related to the County Resolution and the City of Los

4

Angeles's emergency ordinance regarding the COVID-19 pandemic (L.A. Mun. Code, § 49.99 (section 49.99)).

On the day of trial (September 29), the trial court heard argument on Mahmoud's motion to amend his answer. The court denied the motion, finding the request was untimely and Mahmoud had failed to establish good cause for granting the requested relief. Nevertheless, the court stated it would allow Mahmoud to present evidence at trial regarding application of the County Resolution and section 49.99.

C.     *Evidence at Trial*

The trial court held a one-day bench trial on September 29, 2022. Mehran Ebrahimpour, the managing member of Armani, testified Mahmoud stopped paying rent in April 2020. Ebrahimpour visited the property approximately twice per month between April 2020 and the time of trial, and he observed each time that Mahmoud's market was open for business. During some of those visits he saw deliveries being made to the market. Armani's attorney played a video for the court taken on August 15, 2022 showing multiple deliveries to the market. Mahmoud never communicated to Ebrahimpour or his property manager that Mahmoud was unable to pay the rent because of the financial impact of the COVID-19 pandemic, nor did Mahmoud provide any other explanation for his failure to pay rent.

Mahmoud testified he stopped paying rent in April 2020 due to the financial impacts of the pandemic. Mahmoud admitted he never communicated to Ebrahimpour in writing that he was unable to pay due to the pandemic. Mahmoud said he told the property manager that he was unable to pay the rent due

5

to COVID-19; however, Mahmoud spoke to the property manager only twice between April 2020 and December 2020.

Mahmoud's testimony was inconsistent regarding whether he operated the market during the pandemic.  Armani's attorney read Mahmoud's deposition testimony into the record, in which Mahmoud stated he closed the market after March 2020 for "several months."  When asked at trial about his deposition testimony, Mahmoud initially testified the market was closed for more than six months.  But he then explained, "I would have been opened the store almost every day, to check to see if we have been—we were operating, but not fully.  I'm not saying it was closed, the store, all the time."  Later in his testimony, Mahmoud stated (in response to a question by his attorney) that the market was open for a few weeks up to a month and a half after the pandemic started, then it closed completely from May to December 2020.

Armani's attorney introduced six bank statements Mahmoud produced during discovery.  The statements were from the first half of 2020 for the bank account in which Mahmoud deposited all income from the market.[1]  The bank statements for

_____

[1]     Mahmoud produced six bank statements at his deposition (for the period from January to July 2020, with June omitted), which were admitted at trial.  He acknowledged that during discovery Armani's attorney had requested bank records and other financial documents but Mahmoud only produced the six bank statements.  Mahmoud also admitted he had other documents in his possession that reflected gross receipts and inventory purchases for the market, including ledgers and purchase invoices, but he did not produce them in response to Armani's requests, nor did he produce any financial records dated after July 2020.

6

January and February 2020 showed deposits of approximately $61,000 and $63,000 respectively, whereas the statements from March, April, May, and July showed deposits of approximately $18,000, $8,000, $9,000, and $22,000. Mahmoud testified some of the income shown on the April and May bank statements was from sources other than the market's revenue, such as money Mahmoud "borrow[ed] . . . from credit" to cover "local invoice[s]."

D.    *Closing Arguments and the Trial Court's Decision in Favor of Armani*

In his closing argument, Armani's attorney argued Mahmoud was not protected by COVID-19 tenant protections because he had failed to provide written notice to Armani that the failure to pay rent was due to the pandemic. Further, Mahmoud had not met his burden to show his inability to pay rent as a result of the pandemic.

Mahmoud's attorney in his closing argument acknowledged that Mahmoud was obligated to pay the rent owed, but he argued the COVID-19 tenant protections prevented Armani from evicting Mahmoud or filing an ejectment claim against him. Further, he argued, Mahmoud had "established the defense that during those first three months [of the pandemic] he was not able to pay the rent due to the decline in sales" and that the market was closed for business for eight or nine months. In addition, Mahmoud's attorney asserted, although the County Resolution required a tenant give written notice to the landlord of an inability to pay due to the pandemic, section 49.99 did not contain such a requirement.[2]

---

[2]    Mahmoud's attorney took the position that the County Resolution required written notice from the tenant; however, as

7

The trial court recited detailed findings of fact and rulings and issued a four-page minute order reiterating its findings.[3] The court found there were "a number of credibility issues" with Mahmoud's testimony and evidence. Specifically, the court did not find credible Mahmoud's testimony that the market was closed for eight months, in part because the bank statements showed the market's income was increasing in July 2020 and Ebrahimpour testified the business was always open when he visited.

The trial court further found "the evidence at trial failed to show that [Mahmoud] was unable to pay rent due to circumstances related to the COVID-19 pandemic. Given this factual finding, state and local eviction moratoria do not apply here."[4] The court specifically noted that while "there was some testimony about whether [Mahmoud] was affected [by the pandemic]," there was no testimony that he was entirely unable to pay rent. The court continued, "[U]nder the county and the state moratoria the tenant has to provide written notice of the

---

we will discuss, the resolution does not require notice to be in writing.

[3]    The trial court's findings of fact and oral pronouncement of judgment made on the record on September 29, 2022 is substantially the same as the minute order entered that day. We rely principally on the oral statement because, as the minute order notes, "[m]ore detailed findings were stated on the record in open court."

[4]    The trial court reiterated that despite its denial of the motion to amend the answer, "for purposes of this ruling, I am going through an analysis as though that answer was filed. . . . I am making factual findings based on the moratoria."

8

monthly inability to pay. That clearly wasn't done here, and I don't think there's any dispute about that." Accordingly, the court found in favor of Armani on the ejectment and breach of contract causes of action.

On October 11, 2022 the trial court entered judgment in favor of Armani in the amount of $156,966.49, plus attorneys' fees "to be determined post-judgment." The judgment also directed Mahmoud to surrender the premises by October 30, 2022. Mahmoud timely appealed.

## DISCUSSION

A. *Standard of Review*

In reviewing a judgment following a bench trial, "'we review questions of law de novo, and we review the trial court's findings of fact for substantial evidence.'" (*State of California ex rel. Rapier v. Encino Hospital Medical Center* (2022) 87 Cal.App.5th 811, 828; accord, *Ribakoff v. City of Long Beach* (2018) 27 Cal.App.5th 150, 162.) In reviewing a judgment for substantial evidence, we "'"consider all of the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference, and resolving conflicts in support of the [findings].'"" (*Kao v. Joy Holiday* (2020) 58 Cal.App.5th 199, 206.)

However, in this case, Mahmoud bore the burden of proof because he was seeking to establish an affirmative defense under the COVID-19 ordinances. (*Bertero v. National General Corp.* (1974) 13 Cal.3d 43, 54.) "'"In the case where the trier of fact has expressly or implicitly concluded that the party with the burden of proof did not carry the burden and that party appeals, it is misleading to characterize the failure-of-proof issue as whether

9

substantial evidence supports the judgment." [Citation.] "Thus, where the issue on appeal turns on a failure of proof at trial, the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law.""" (*In re Marriage of Diamond* (2024) 106 Cal.App.5th 550, 566; accord, *Jan F. v. Natalie F.* (2023) 96 Cal.App.5th 583, 593.) ""Specifically, the question becomes whether the appellant's evidence was (1) 'uncontradicted and unimpeached' and (2) 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.""" (*Diamond*, at p. 566; accord, *Symons Emergency Specialties v. City of Riverside* (2024) 99 Cal.App.5th 583, 597; *Eisen v. Tavangarian* (2019) 36 Cal.App.5th 626, 647 [applying this standard of review where defendant failed to prove affirmative defense at trial].)

B. *The County Resolution*

On March 19, 2020 the Los Angeles County Board of Supervisors (Board) approved an executive order imposing a temporary moratorium on evictions for nonpayment of rent by tenants impacted by the COVID-19 pandemic. (Exec. Order of the Chair of the L.A. County Bd. of Supervisors (March 19, 2020).) The initial moratorium was in effect from March 4 to May 31, 2020, and the Board approved multiple extensions thereafter. (County Resolution, § I.)

On September 28, 2021 the Board approved the County Resolution, which further amended and extended the eviction moratorium. The County Resolution provided that a landlord could not evict a tenant for nonpayment of rent "if the Tenant demonstrates an inability to pay rent and/or such related charges due to Financial Impacts Related to COVID-19 . . . and the

10

Tenant has provided notice to the Landlord within seven (7) days after the date that rent and/or such related charges were due, unless extenuating circumstances exist, that the Tenant is unable to pay." (County Resolution, § V(A)(1).)[5] This provision applied to residential as well as commercial tenants, including commercial tenants "whose tenancy is currently in a holdover or month-to-month tenancy." (*Id.*, § V(A)(1)(a).) In providing notice to the landlord of the inability to pay, commercial tenants with nine or fewer employees "may provide, and Landlords must accept, a self-certification of inability to pay rent, and are required to provide notice to the Landlord to this effect" within the specified timeframe. (*Id.*, § V(B)(2)(a).)

In addition to the eviction moratorium, the County Resolution provided that commercial tenants with nine or fewer employees would have 12 months from the expiration of the moratorium period to pay any unpaid rent. (County Resolution, § V(C)(2)(a).) The moratorium period ended on January 31, 2022,

---

[5] The March 19, 2020 moratorium approved by the Board contained the identical language that a commercial property owner could not evict a commercial tenant for nonpayment of rent, late charges, and/or other fees if the tenant demonstrated an inability to pay rent and/or other related charges due to the financial impacts related to COVID-19 and provided seven days' notice after the date rent was due, unless there were extenuating circumstances. (Exec. Order of the Chair of the L.A. County Bd. of Supervisors, § 1.a. (March 19, 2020).) Likewise, although the County Resolution was amended several times in 2022 and 2023, the relevant sections remained substantively unchanged. Because the ordinances contain the identical eligibility requirement, we focus on the 2021 County Resolution, as do the parties.

11

giving commercial tenants until January 31, 2023 to pay back rent. (*Id.*, § II.) Tenants could not be evicted for failing to pay rent that accrued prior to January 31, 2022. (*Id.*, § V(C)(4).)

The County Resolution provided not only a moratorium on evictions during the applicable period, but also prohibited landlords from bringing "civil actions, including, but not limited to, actions for repayment of rental debt accrued on or after March 4, 2020." (County Resolution, § IV(A).) Landlords violating this prohibition could be subject to civil and criminal penalties. (*Id.*, § X(A) & (B).) The County Resolution also stated the protections in the resolution "shall constitute an affirmative defense for a Tenant in any . . . civil action seeking repayment of rental debt." (*Id.*, § X(C).)

C.    *Mahmoud Has Not Shown He Is Entitled to the Protections of the County Resolution*

As discussed, the trial court found Mahmoud failed to present evidence establishing he was unable to pay rent due to the pandemic, and therefore he could not rely on the County Resolution to avoid liability in this action. Mahmoud argues he was not obligated to present evidence of his inability to pay due to COVID-19, but instead, the court was obligated to accept his self-certification as conclusive evidence of his inability to pay. While we are skeptical of Mahmoud's argument,[6] we need not

_____

[6]    Although the County Resolution required landlords to accept a self-certification from commercial tenants of their inability to pay rent for the tenant to avoid eviction, it does not necessarily follow that such a certification would satisfy a tenant's evidentiary burden at trial. The United States Supreme Court in 2021 made a similar observation in *Chrysafis v. Marks* (2021) 141 S.Ct. 2482, 2482 in temporarily enjoining

12

decide the evidentiary burden placed on the tenant because Mahmoud failed to prove he satisfied the notice requirement for application of the County Resolution.[7]

Under the plain language of the County Resolution two prerequisites must be satisfied before the prohibition on eviction and other civil actions against tenants will apply:  the tenant must demonstrate an inability to pay rent due to the pandemic; *and* the tenant must provide notice of such inability to the landlord within seven days after the rent is due.  (County Resolution, § V(A)(1).)  As the trial court correctly stated, this latter prerequisite requires the tenant to provide notice of inability to pay for each month that payment is due.

Because the trial court's ruling focused on the inability-to-pay prong of the County Resolution, the court did not make a specific finding as to whether Mahmoud provided oral notice of

---

implementation of part of New York's eviction moratorium, which prevented a landlord from contesting a tenant's self-certification of financial hardship without providing the landlord a hearing. The court explained, "This scheme violates the Court's longstanding teaching that ordinarily 'no man can be a judge in his own case' consistent with the Due Process Clause."  (*Ibid.*, citing *United States v. James Daniel Good Real Property* (1993) 510 U.S. 43, 53 [due process generally requires a hearing].)

[7]     On appeal, Mahmoud does not challenge the trial court's judgment on the basis of COVID-19 eviction protections enacted by the City of Los Angeles or by the state.  Accordingly, any arguments based on those protections are forfeited.  (See *Broad Beach Geologic Hazard Abatement Dist. v. 31506 Victoria Point LLC* (2022) 81 Cal.App.5th 1068, 1093 ["failure to raise contention in opening brief constitutes forfeiture"]; *In re Marriage of Ankola* (2020) 53 Cal.App.5th 369, 372, fn. 3 [same].)

13

his inability to pay (although the court found Mahmoud did not provide written notice, which is not disputed, but not required). Regardless, Mahmoud has not demonstrated the evidence compels a finding he provided oral notice that met the requirements of the County Resolution. In fact, there was no evidence at trial that Mahmoud provided oral notice of his inability to pay the rent within seven days after the rent was due each month. Nor is there evidence of any extenuating circumstances that would have excused the notice requirement. The only evidence that Mahmoud provided any notice to Armani was Mahmoud's testimony that he spoke to the property manager twice at some point during the second half of 2020, at which time he stated he did not have the ability to pay the rent. But even if Mahmoud informed the property manager of his inability to pay rent during those two conversations, this evidence was insufficient to compel a finding that he gave notice for each payment that was due during the relevant period because there was no evidence that the two conversations took place during particular months or within seven days after the rent was due, as required by the County Resolution. Accordingly, Mahmoud has not established that he satisfied the notice requirement necessary to invoke the protections of the County Resolution.[8]

---

[8] Because the trial court considered Mahmoud's affirmative defense based on the County Resolution at trial, and we conclude Mahmoud has not met his burden to show he met the requirements of the County Resolution, we do not reach his arguments that the court erred in denying his motions to amend his answer and file a cross-complaint. (See *Vaillette v. Fireman's Fund Ins. Co.* (1993) 18 Cal.App.4th 680, 685 ["leave to amend should *not* be granted where, in all probability, amendment would be futile"].)

14

## DISPOSITION

The judgment is affirmed.  Armani Investments, LLC, is to recover its costs on appeal.


                                    FEUER, J.

We concur:


        MARTINEZ, P. J.


        STONE, J.